**Amy GULBRANSON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 71A05–1103–CR–120.**

Court of Appeals of Indiana.

Aug. 17, 2011.

Jeffrey E. Kimmell, South Bend, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Gary R. Rom, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BRADFORD, Judge.

Appellant–Defendant Amy Gulbranson appeals her conviction for Class C felony Assisting a Criminal.[1] Specifically, Gulbranson contends that the evidence is insufficient to sustain her conviction. We affirm.

## FACTS AND PROCEDURAL HISTORY

On September 29, 2010, Gulbranson was driving around the south side of South

---

1. Ind.Code § 35–44–3–2 (2010).

Bend when she met up with Armond Stork, Howard Kindred, and Dominick Smallwood. Kindred, a drug dealer who had previously sold drugs to Gulbranson, argued with Gulbranson about money that he claimed she owed him. Gulbranson, Stork, Kindred, and Smallwood went to a liquor store together where Gulbranson bought beer and a bottle of Seagram's gin. Gulbranson also bought some "crack" from a dealer that she met at the liquor store. Tr. p. 238. Gulbranson then took Stork, Kindred, and Smallwood to the home she shared with eighty-six-year-old William Henry because she wanted to change her clothes. After arriving at Henry's home, Gulbranson and Stork left so that she could meet a client who had agreed to pay her in exchange for sex at a nearby Motel 6. Kindred and Smallwood stayed at Henry's home while Gulbranson and Stork went to the Motel 6.

While Gulbranson and Stork were gone, either Kindred or Smallwood hit Henry in the head with a bottle of Seagram's gin before tying his ankles together with an electrical cord and placing a coat over his head. Kindred and Smallwood then ransacked Henry's bedroom and stole two rings, two bracelets, Henry's wallet, along with "a lot of little stuff." Tr. p. 79. As a result of being struck with the bottle of gin, Henry suffered injuries to his head and face and was knocked unconscious.

Gulbranson and Stork soon returned to Henry's home. Upon finding Henry unconscious and bound, Stork retreated to the vehicle that Gulbranson was driving. Gulbranson became upset and yelled at Kindred and Smallwood before returning to the vehicle's driver's seat. A few minutes later, Kindred and Smallwood, who were wearing gloves, exited Henry's home, got into the vehicle, and Gulbranson drove away. About five minutes later, a neighbor discovered Henry bound and unconscious and notified police.

After leaving Henry's home, Gulbranson drove herself, Stork, Kindred, and Smallwood to a nearby McDonald's restaurant. Stork, Kindred, and Smallwood fled at some point before Gulbranson entered the restaurant. Upon entering the restaurant, Gulbranson borrowed a telephone and made numerous telephone calls. Approximately fifteen to twenty minutes later, Gulbranson called the police and reported the attack on Henry. After the police arrived at the McDonald's, Gulbranson told police that of the three men, she knew only Kindred and that all was well when she left Henry's home by herself to go to Taco Bell. Gulbranson claimed that upon returning from Taco Bell, "she was grabbed from behind by her hair, swung around, [and] thrown into the TV." Tr. p. 105. She claimed that the three men "drug her out of the house and forced her to drive them away." Tr. 105. Gulbranson also claimed that "as soon as she thought it was safe, she ran right inside and called 911 from a McDonald's phone." Tr. p. 105. Gulbranson later recanted her original statement and admitted that she had lied to the police.

On October 1, 2010, the State charged Gulbranson with Class C felony assisting a criminal and Class A felony robbery. Following a bench trial on February 8, 2011, the trial court found Gulbranson guilty of Class C felony assisting a criminal and not guilty of Class A felony robbery. On March 11, 2011, the trial court sentenced Gulbranson to eight years of incarceration. This appeal follows.

## DISCUSSION AND DECISION

On appeal, Gulbranson contends that the evidence presented at trial is insufficient to sustain her conviction for Class C felony assisting a criminal.

When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction.... The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State,* 867 N.E.2d 144, 146–47 (Ind.2007) (citations, emphasis, and quotations omitted). "[I]t is for the trier of fact to reject a defendant's version of what happened, to determine all inferences arising from the evidence, and to decide which witnesses to believe." *Holeton v. State,* 853 N.E.2d 539, 541 (Ind.Ct.App.2006). Upon review, appellate courts do not reweigh the evidence or assess the credibility of the witnesses. *Stewart v. State,* 768 N.E.2d 433, 435 (Ind.2002).

The offense of assisting a criminal is governed by Indiana Code section 35–44–3–2, which provides that:

(a) A person not standing in the relation of parent, child, or spouse to another person who has committed a crime or is a fugitive from justice who, with intent to hinder the apprehension or punishment of the other person, harbors, conceals, or otherwise assists the person commits assisting a criminal, a Class A misdemeanor. However, the offense is:

(1) a Class D felony if the person assisted has committed a Class B, Class C, or Class D felony; and

(2) a Class C felony if the person assisted has committed murder or a Class A felony, or if the assistance was providing a deadly weapon.

(b) It is not a defense to a prosecution under this section that the person assisted:

(1) has not been prosecuted for the offense;

(2) has not been convicted of the offense; or

(3) has been acquitted of the offense by reason of insanity.

Thus, to convict Gulbranson of Class C felony assisting a criminal, the State needed to prove that: (1) she was not in the relation of parent, child, or spouse of either Smallwood or Kindred; (2) either Smallwood or Kindred committed a Class A felony; (3) she acted with the intent to hinder the apprehension or punishment of either Smallwood or Kindred; and (4) she harbored, concealed, or otherwise assisted Smallwood or Kindred.

We observe that Gulbranson does not claim on appeal that the evidence is insufficient to prove that she was not in the relation of parent, child or spouse with either Smallwood or Kindred or that she assisted Smallwood and Kindred after they committed a Class A felony with the intent to hinder their apprehension or punishment. Instead, Gulbranson claims that the evidence is insufficient to sustain her conviction for Class C felony assisting a criminal because the State failed to prove that either Smallwood or Kindred has been convicted of committing a Class A felony. In support, Gulbranson relies on the Indiana Supreme Court's opinions in *McCarty v. State,* 44 Ind. 214 (1873) and *McKnight v. State,* 658 N.E.2d 559 (1995), as well as this court's conclusion in *Myers v. State,* 765 N.E.2d 663 (Ind.Ct.App.2002). Gulbranson's claim, however, is misplaced because the current version of Indiana Code section 35–44–3–2, which was in effect at the time Gulbranson assisted Smallwood and Kindred, no longer requires the State to prove that the assisted person has been prosecuted for and convicted of a

Class A felony.[2] *See* Indiana Code § 35–44–3–2(b) (providing that it is not a defense to a prosecution under this section that the person assisted: (1) has not been prosecuted for the offense; or (2) has not been convicted of the offense). As such, Gulbranson's reliance on authority interpreting prior versions of Indiana Code section 35–44–3–2 is misplaced, and Gulbranson's claim is this regard must fail.

The judgment of the trial court is affirmed.

ROBB, C.J., and BARNES, J., concur.

---

2. Indiana Code section 35–44–3–2 was amended by P.L. 159–2009, Sec. 1, and took effect on July 1, 2009. *See* IN. LEGIS. 159–2009 (2009). Thus, the amended version of Indiana Code section 35–44–3–2 was in effect when Gulbranson committed the instant crime on September 29, 2010.