**Theodore C. LEWIS, Appellant,**

**v.**

**STATE of Indiana, Appellee.**

**No. 481S120.**

Supreme Court of Indiana.

Aug. 10, 1982.

Charles L. Berger, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Janis L. Summers, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-appellant, Theodore C. Lewis, was charged in the Vanderburgh Circuit Court with the crimes of attempted rape and criminal deviate conduct. The jury returned guilty verdicts on the included offenses of battery with bodily injury, a class A misdemeanor, and criminal deviate conduct, a class B felony. The trial court sentenced Defendant to one year for his battery conviction and to twenty years for his deviate conduct conviction. Said sentences were ordered to be served consecutively.

Four issues are raised in this direct appeal as follows:

1. Whether the trial court erred in overruling Defendant's objection to the continuation of the testimony of D. D., the prosecuting witness, when D. D.'s testimony became interrupted by her sobbing;

2. Whether the trial court erred in failing to admonish the jury about an improper question asked of D. D. by the prosecuting attorney;

3. Whether the trial court erred in refusing to give Defendant's tendered Instructions II and III pertaining to the necessity of a rape victim to have resisted the intercourse; and

4. Whether the jury's verdict was supported by sufficient evidence.

On November 20, 1980, D. D. was on her way to work as a nurses' aide at the McCurdy Residential Center in Evansville. While she waited beside a street before crossing it, Lewis approached her in his car. He stopped and asked her for directions to Busler's on Saint Joe Street. Even though D. D. gave him directions, Lewis asked her to go along to show him where it was. He said he would drive her to work after locating Busler's, and would explain to her superiors if she was late. She willingly went with Lewis as he drove to Busler's. Upon arriving there, Lewis informed D. D. that he had to go home and change his clothes. He told her that he wanted her to accompany him to his home, after which he would take her to her job. D. D. testified that she refused to go and attempted to leave the car, but that Lewis pulled her back into his car and forced her to proceed with him. She claimed that when they reached his house trailer, Lewis dragged her inside and forced her to perform several sexual acts with him. Specifically, Lewis forcibly removed D. D.'s clothes and attempted to have intercourse with her. Failing at intercourse, Lewis forced D. D. to have oral sex with him. D. D. testified that Lewis threatened to shoot her with his .38 pistol and throw her into the Ohio River if she did not obey. She also testified that he slapped her and called her abusive names when she refused to do as he ordered. She stated that she obeyed Lewis because she was afraid, even though she never saw any weapon. After Lewis was satisfied with his exploit of D. D., he drove her to the McCurdy Center. D. D. immediately reported the incident to her supervisor, who called the police.

## I

On two different occasions, D. D. hesitated in her testimony and began to cry and sob. Each time, Defendant's counsel objected to the continuation of D. D.'s testimony because of her emotional display. The objections were overruled. When D. D. first manifested her deep distress, the trial court rhetorically questioned whether D. D. could continue and then allowed her to briefly walk outside the courtroom. Upon the second occurrence, the court kept D. D. in control by directing "next question . . . . next question." Through the rest of her testimony, D. D. was generally responsive to counsel's questions.

Defendant made no motion for an admonishment of the jury or of the witness. Lewis also never moved for either a continuance or for a mistrial. It is now Defendant's contention that D. D.'s show of emotion amounted to an "evidentiary harpoon" since the trial court should not have allowed D. D. to continue before the jury. An "evidentiary harpoon" is the deliberate introduction of improper evidence by counsel to prejudice the jury, the effect of which cannot be corrected by any admonition of the trial court. It does not appear here that the State deliberately sought to manipulate D. D. so as to influence or prejudice the jury. *Pallett v. State*, (1978) 269 Ind. 396, 381 N.E.2d 452; *Block v. State*, (1976) 265 Ind. 569, 356 N.E.2d 683.

The very nature of D. D.'s testimony was extremely embarrassing and emotionally difficult. It is the duty of a trial judge to so manage and preside over a trial in order that all proper evidence which the parties have to bring forward is presented. The trial judge is not, however, to interpose himself into the proceedings to such an extent that his personality or authority indicate his opinions or in any other way influence the jury. In this case, the trial judge did what he was required to do. He allowed the witness to compose herself when she was overwhelmed by her feelings. The judge then permitted her to further testify as to the facts she had to bring forward. There is nothing else the judge should have been required to do. We will not disturb the trial judge's judgment in handling this matter.

## II

Defendant claims he was irreparably prejudiced by an improper question posed

before the jury by the prosecutor. The question is argued to constitute another "evidentiary harpoon." During the re-redirect examination of D. D., the prosecutor asked: "If you had it to do over again, would you show him where Busler's was?" Defendant's counsel immediately objected stating only that the question was "highly improper and objectionable." The trial court agreed and sustained the objection. Since no admonishment or withdrawal of submission was requested, none was given.

Prosecutor's question does not constitute an "evidentiary harpoon" and the way the trial judge handled the objection does not require a reversal. *Pallett v. State, supra; Block v. State, supra.* As the State correctly points out, not every bit of improper or incompetent evidence will be found to constitute an "evidentiary harpoon." There must be some discernible and substantial prejudice or a showing of grave peril to Defendant as a result of the improper statement to require any further and more severe action by the trial judge. Also, it must appear that the statement had such a persuasive effect on the jury to have prejudiced Defendant and have placed him in such grave peril that he could not extricate himself. *See Morris v. State*, (1979) (1979) Ind., 384 N.E.2d 1022. Here the defense did not indicate to the trial judge that such further action was required. Furthermore, the question was not of such a serious nature that it unduly and irreparably prejudiced Defendant. The trial judge found the question improper and properly sustained the defense's objection to it. No reversible error is presented to us on this issue.

### III

Defendant further claims that the trial court committed reversible error in refusing to give his Tendered Instructions II and III. These two instructions referred to the necessity of a rape victim to have resisted the intercourse in order to demonstrate that she did not consent to it.

The evidence proffered at trial presented conflict on the matter of D. D.'s resistance. D. D. testified in detail about her encounter with Defendant. She stated that while she willingly went with him to direct him to Busler's, she emphatically resisted his sexual advances both by word and deed. She stated that she submitted to Lewis only because he threatened her, saying that he would kill her with his .38 and throw her into the Ohio River. Contrary to D. D.'s testimony, Lewis claims that she consented to his advances.

Defendant's Tendered Instruction II was as follows:

"The law requires that a victim of the crime of rape must not have consented to said acts. Her resistance must not be mere pretense, but in good faith. The law requires that the woman shall do what is reasonable for her to do in accordance with her age, strength and all attendant circumstances to manifest her opposition. Resistance by mere words is not enough. The question of resistance is a question of fact for the jury to determine and find and not a question for the court to decide."

Defendant's Tendered Instruction III was as follows:

"You are instructed that from the peculiar character of the crime of rape, the law requires that care be used in scrutinizing such a charge. The State must show beyond a reasonable doubt that there was actual resistance and opposition on the part of the prosecuting witness, or that opposition and resistance was overcome by force or restrained by fear. Opposition and resistance by mere words is not enough. The resistance must be by acts and must be reasonably proportionate to the strength and opportunities of the prosecuting witness."

The record shows that the trial judge gave several instructions to the jury that covered the subject matter of Defendant's two tendered instructions and thereby instructed the jury in a complete and adequate manner. In the court's Final Instructions I and II, the trial judge defined the crimes of rape, attempted rape, and criminal deviate conduct and informed the jury that a requisite element of each of these

crimes is that the victim must be compelled by force or imminent threat of force to engage in the act. These instructions also informed that if the State did not prove each of the requisite elements beyond a reasonable doubt, then the jury should find Defendant not guilty. In the Court's Final Instruction IX, the jury was further informed that the acts of sexual intercourse or deviate sexual conduct must have been committed against the resistance of the alleged victim. The court advised that if said victim did not resist Defendant's act and if Defendant did not threaten or use force, then the jury should find Defendant not guilty. The trial court gave Defendant's Tendered Instruction I, which again informed the jury that in order for an act to constitute an attempted rape or criminal deviate conduct, the act must have been committed against the resistance of the alleged victim. This Instruction also stated that if the jury found the victim did not resist Defendant's act and if the jury found Defendant did not threaten or use force, then the jury should find Defendant not guilty. Finally, the court gave State's Tendered Instruction I, which stated:

> "It is not the law in the State of Indiana that a woman who is a victim of criminal sexual deviancy or attempted rape is required to resist by all violent means within her power. The law requires only that the case be one in which the woman did not consent. Her resistance must not be mere pretense, but in good faith, resistance by mere words is not enough. The law does not require that the woman shall do more than her age, strength and all attendant circumstances make it reasonable for her to do in order to manifest her opposition. Physical resistance is not necessary where prevented or averted by threats and fear. The question of resistance is a question of fact for the jury to determine and find and not a question this court can decide."

The court also gave other instructions which informed the jury as to Defendant's presumption of innocence, the State's burden to prove beyond a reasonable doubt and the manner in which the jury should weigh the evidence and determine the credibility of witnesses. It is apparent that the subject matter of Defendant's Tendered Instructions II and III was adequately and fully covered by the Final Instructions given by the trial court. There was, therefore, no error in the court's refusal to give Defendant's Tendered Instructions II and III. *Lock v. State*, (1980) Ind., 403 N.E.2d 1360; *Jackson v. State*, (1980) Ind., 402 N.E.2d 947; *Coonan v. State*, (1978) 269 Ind. 578, 382 N.E.2d 157, *cert. denied*, 440 U.S. 984, 99 S.Ct. 1798, 60 L.Ed.2d 246.

### IV

Finally, Defendant claims that there was not sufficient evidence to support his battery and deviate conduct convictions. As we have repeatedly stated, this Court will neither weigh the evidence nor judge the credibility of witnesses but will look only to the evidence most favorable to the State with all reasonable inferences that may be drawn therefrom. *Borden v. State*, (1980) Ind., 400 N.E.2d 1368; *Morris v. State*, (1980) Ind., 398 N.E.2d 1284. If probative evidence can be found to prove each element of an offense beyond a reasonable doubt, a conviction will be affirmed. *Marsh v. State*, (1979) Ind., 396 N.E.2d 883; *White v. State*, (1979) Ind., 397 N.E.2d 949. It is for the trier of fact to reject a defendant's version of what happened, to determine all inferences arising from the evidence, and to decide which witnesses to believe. *Hill v. State*, (1979) Ind., 394 N.E.2d 132; *Bryant v. State*, (1978) 268 Ind. 498, 376 N.E.2d 1123.

The defense specifically argues that there is not sufficient evidence to support the jury's finding that Defendant compelled D. D. against her will and by threat of force to engage in a criminally deviate act. As we have indicated above, there was detailed testimony by both D. D. and Defendant as to all of the facts and circumstances here involved. Their testimonies presented a conflict to the jury on whether or not D. D. resisted Defendant's sexual advances. This conflict, of course, involved questions of fact and credibility for the jury to deter-

mine. It was their duty to make a determination of the facts and to arrive at a verdict. There was ample evidence given by D. D. from which the jury could reasonably find that Defendant committed the offense of criminal deviate conduct against D. D.'s will and in spite of her resistance.

■ With respect to the attempted rape charge, the jury found Defendant guilty of the lesser included offense of battery with bodily injury. A battery is committed when one "knowingly or intentionally touches another person in a rude, insolent or angry manner." Ind.Code § 35–42–2–1 (Burns Supp.1982). Any touching, however slight, is sufficient. *Shaw v. State*, (1959) 239 Ind. 248, 156 N.E.2d 381. As in the instant case, a battery is statutorily aggravated to class A misdemeanor status when it results in bodily injury. It is Defendant's contention that there was no evidence of bodily injury from which the jury could find him guilty of battery with bodily injury. Ind.Code § 35–41–1–2 (Burns Supp.1982) defines bodily injury as "any impairment of physical condition, including physical pain." D. D. testified that Lewis dragged her from his car and into his trailer, where he slapped and pushed her several times. This testimony presented evidence to the jury from which they could properly find that Lewis caused D. D. to incur physical pain. It is not necessary that some physical trauma to the body be shown. It is sufficient that the victim experienced physical pain by Defendant's action. There was sufficient evidence in this case from which the jury could reasonably return the verdicts it did.

The trial court is in all respects affirmed.

GIVAN, C. J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.